IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CALVIN SCOTT, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. 2:05cv651-T |
| v. | ) | |
| | ) | |
| JAMES (BUDDY) SWEARENGIN, JR., | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| CALVIN SCOTT, SR., | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 2:05cv652-F |
| | ) | |
| v. | ) | |
| | ) | |
| RAY DENNIS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**NOTICE OF FILING OF HEARING
OFFICER'S DECISION**

The Decision of the undersigned following the full evidentiary hearing conducted pursuant to the court's September 21, 2005 order is attached hereto.

/s/ Frank S. James III
FRANK S. JAMES III

OF COUNSEL:

BAKER DONELSON, BEARMAN,
  CALDWELL & BERKOWITZ, P.C.
SouthTrust Tower
420 20th Street North, Suite 1600
Birmingham, Alabama  35203
Telephone: (205) 328-0480
Facsimile: (205) 322-8007

B FSJ 688735 v1
1030798-000006 10/13/2005

BEFORE THE ALABAMA DEPARTMENT
OF REHABILITATION SERVICES

IN RE: THE MATTER OF CALVIN  \*   A FULL EVIDENTIARY
SCOTT, SR.                   \*   HEARING PURSUANT TO
                             \*   THE RANDOLPH-SHEPPARD
                             \*   VENDING ACT 20 U.S.C.
                             \*   §§ 107, et seq.

# DECISION

On October 6, 2005, a full evidentiary hearing, normally convened pursuant to the Administrative Code Rules ("Rules") of the Alabama Department of Rehabilitation Services ("ADRS"), Rule 795-7-12-.04, was convened pursuant to an order of the United States District Court for the Middle District of Alabama to decide issues raised by licensed blind vendor Mr. Calvin Scott, Sr. in the consolidated cases of *Calvin Scott v. Ray Dennis, Perry Hopper, Ken Green, State of Alabama Department of Rehabilitation Services Business Enterprise Program*, Civil Action No. 2:05cv652-F, and *Calvin Scott v. James (Buddy) Swearengin, Jr.*, Civil Action No. 2:05cv651-T. The order was entered after the defendants filed motions to dismiss. According to the Court, in an order dated August 25, 2005, "the defendants in both cases argue that the plaintiff's claims are due to be dismissed because he failed to exhaust his administrative remedies." In a subsequent order dated September 21, 2005, the court noted that "[a]ll of the plaintiff's claims arise from his participation in the Randolph-Sheppard Vending Facilities Program (the "Program"), a federal program for blind vendors, administered by [ADRS]."

The Court further noted that claims arising out of the Program are governed by 20 U.S.C. § 107d-aa(a), which permits "[a]ny blind licensee who is

1

dissatisfied with any action arising from the operation of the ... [P]rogram to submit a request for a full evidentiary hearing." *Id.* at 1, *citing* 20 U.S.C. § 107d-1(a). The Court finally noted that a blind vendor dissatisfied with the outcome of such a hearing may then file a complaint with the United States Secretary of Education who is then required to initiate binding arbitration. *Id.* at 1 to 2.

This controversy arises from an undated letter from James (Buddy) Swearengin, Plant Maintenance Supervisor of Montgomery's Gordon Persons Building, that was received By ADRS's Business Enterprise Program ("BEP") on February 7, 2005. Mr. Swearengin's letter requested ADRS to remove Mr. Scott, and his assistant, Mrs. Scott, from the Gordon Persons Building within three days of ADRS's receipt of the letter. At the time, Mr. Scott was operating the vending facility at the Gordon Persons Building pursuant to an AGREEMENT FOR OPERATION OF A VENDING FACILITY UNDER RANDOLPH SHEPPARD ACT BETWEEN THE ALABAMA DEPARTMENT OF REHABILITATION SERVICES, BUSINESS ENTERPRISE PROGRAM, A STATE LICENSING AGENCY, AND CALVIN SCOTT, LICENSED BLIND MANAGER entered into on July 20, 1998.

Mr. Swearengin's letter stated that "the Scotts are high tempered, as well as unreasonable. They don't attempt to work with Building Management, and have the attitude 'its their way, or no way at all.'" Mr. Swearengin's letter also stated":

> There have been incidents where the Scotts have threatened to bring a gun and shoot personnel, and I have continuous complaints with them not refunding money from the machines.... The most recent incident where the Scotts refused to work with

>Building Management has prompted me to make this request.

Upon receipt of Mr. Swearengin's letter, BEP Director Ray Dennis arranged for a meeting between himself and Mr. Swearengin "with the intent to preserve Mr. Scott's business in the Gordon Persons Building." During the meeting, which occurred on February 9, 2005, Mr. Swearengin reiterated his position. According to the undisputed testimony of Mr. Dennis, when Mr. Swearengin asked if the Scotts could be relocated, Mr. Dennis told him that was impossible "due to the Gordon Persons Building being the ultimate location." Mr. Dennis testified that he told Mr. Swearengin that Mr. Scott's ouster from the Gordon Persons Building would be devastating to Mr. Scott, who had had a long and successful career in the Gordon Persons Building. When Mr. Swearengin said that the main dissatisfaction was with Mrs. Scott, Mr. Dennis suggested that Mr. Scott be allowed to continue his business in the Gordon Persons Building but without Mrs. Scott assisting him. When Mr. Swearengin agreed to this apparent solution, Mr. Dennis wrote Mr. Scott a February 9, 2005 letter outlining certain "non-negotiable" conditions "that must occur as a condition of your continued employment":

>Mrs. Gladys Scott, your current employee, is no longer approved by our agency as an assistant/driver for you and must be replaced.
>
>You will retain a new assistant/driver that is approved by our agency.
>
>You and your employee will cooperate with building management and comply with all security protocols required to enter restricted areas.
>
>You will work with Mr. Ken Green, Business Enterprise Program Representative, to develop a more

3

streamlined, efficient, and customer friendly mode of refunding lost money.

In a letter to Mr. Dennis dated February 14, 2005, Mr. Scott declined to comply with any of the conditions set forth in Mr. Dennis' February 9 letter to him. Mr. Scott further accused Mr. Dennis of being "out of compliance" with certain laws and regulations and of not providing assistance to him in addressing Mr. Swearengin's demands. Mr. Scott's letter also requested an Administrative Review pursuant to the BEP's Due Process[1] regulation, Chapter 795-7-12, specifically Rule 795-7-12-.02, which provides, in pertinent part:

> 795-7-12-.02 <u>Administrative Review</u>. The purpose of an administrative review is to provide an informal process through which a vendor has the opportunity to address and resolve disagreements, issues or SLA actions affecting the operation or administration of his/her facility. An administrative review to resolve disagreements, issues or SLA actions directly effecting the operation or administration of his/her facility is a prerequisite to a commissioner's conference. The following procedures will be utilized for an administrative review:
>
> (a)  A vendor shall request in writing, to the appropriate supervisor within 15 calendar days of the occurrence of the disputed matter, an administrative review. The request shall specify the circumstances for which an administrative review is sought. The supervisor will appoint one SLA staff member who has not been directly involved with the affected vendor to serve on the review team. Failure of the vendor to request an administrative review within the above time frame shall constitute a waiver of his/her right to same resulting in the action becoming final and not subject to further review.

---

[1] The BEP's Due Process regulation was promulgated pursuant to the implementing regulation of the Randolph-Sheppard Vending Stand Act, 34 C.F.R. Part 395, specifically § 395.4, which requires State licensing agencies to "promulgate rules and regulations which have been approved by the Secretary [of Education] and which shall be adequate to assure the effective conduct of the State's vending facility program (including State licensing agency procedures covering the conduct of full evidentiary hearings) ...."

4

      (b)  The supervisor will notify the vendor of the time and place for the review.

In a February 14, 2005 letter, Mr. Dennis appealed to Mr. Scott "not to continue to use your current employee, Mrs. Gladys Scott, at your job site and to comply with the requirements of my letter dated February 9, 2005." Mr. Scott responded in a February 15, 2005 letter that Mr. Dennis was "totally incorrect" and "out of compliance' with certain laws and regulations referred to in his letter. Mr. Scott accused the "BEP Program Director and Representatives" of conspiring with Mr. Swearengin to threaten his job. He threatened to prosecute everyone involved "to the fullest extent that the law allows."

On February 22, 2005, Mr. Dennis wrote Mr. Scott the following letter:

> The intent of this letter is to advise you of your removal from Facility #562 at the Gordon Persons Building. The exit inventory will take place on Thursday, February 24[th] at 10:00 a.m. I strongly encourage you or your designee to participate, however, should you choose not to participate the inventory will be conducted as scheduled.
>
> On February 9, 2005 you were advised of the changes required for your continued conditional employment at Facility #562. Your program representative, Kenneth Green, has informed us in writing "that they (Calvin and Gladys Scott) stated that Calvin would not do it with anyone other than Gladys." You also stated to Mr. Green "that you had not hired anyone to do so" (service the machines).
>
> Your failure to comply with the requirements of the BEP General Rules, Agreement to Operate a Vending Facility and the terms of my letter of February 9, 2005 have left me with no option but to replace you.

5

> From all appearances the approximately 20 snack machines you are responsible for have not been serviced since February 11, 2005. This inaction on your part is tanamount to abandonment of your facility and will not be tolerated. Your recent dereliction of duty has cast the program in a most unfavorable light. Additionally, your customers are not receiving the service they desire and deserve.

On February 25, 2005, Mr. Manual Russo, an ADRS supervisor, wrote Mr. Scott to advise him that his request for an administrative review was scheduled for March 10, 2005. However, prior to the administrative review, Searcy Rushing, Chief of Services of the Alabama Department of Finance, the owner of the Gordon Persons Building, countermanded Mr. Swearengin's demand that the Scotts be ousted from the building. Mr. Rushing acted after reaching an agreement with Mr. Scott that Mrs. Scott could continue to serve as his assistant. Mr. Rushing also acceded to certain other of Mr. Scott's demands, including a more convenient parking place for Mr. Scott's vehicle, the relocation of a certain snack machine and the provision to Mr. Scott of a swipe card key to facilitate his access to secure parts of the Gordon Persons Building.

In a letter dated May 2, 2005, Mr. Dennis advised Mr. Scott that Mrs. Scott was approved by the BEP to serve as Mr. Scott's driver/assistant at his Gordon Persons Building vending facility.

Seemingly having achieved all of his objectives, Mr. Scott advised Mr. Russo, in a letter dated March 8, 2005, that he would not be attending the scheduled March 10 administrative review. However, Mr. Scott's letter stated that the ADRS staff "which includes Ray Dennis, [Assistant BEP Director] Perry Hopper, and [BEP Montgomery East Representative] Ken Green fully supported

B FSJ 688634 v1
1030798-000006 10/13/2005

the libel, slander, and defamation of character that was committed against me and my wife/assistant (Mrs. Gladys Scott), and treated us with the worst levels of disrespect and humiliation I have ever endured in my life."

Thus, at Mr. Scott's direction the scheduled administrative review did not occur.[2] Had it occurred, and had Mr. Scott been dissatisfied with its decision, Mr. Scott could have requested a conference with ADRS commissioner Steve Shivers pursuant to Rule 795-7-12-.03 of BEP's Due Process regulation. Commission Shivers would have been required to issue a written decision to Mr. Scott within 15 days after the commissioner's conference. See *id.* Rule 795-7-12-.04(e). Had Mr. Scott been dissatisfied with Commission Shiver's decision, he could have requested a full evidentiary hearing pursuant to Rule 795-7-12-.04:

> 795-7-12-.04 <u>Full Evidentiary Hearing</u>. In the event a vendor is dissatisfied with the decision of the commissioner, he/she may request a full evidentiary hearing. Generally, a conference with the commissioner is a prerequisite to a full evidentiary hearing; however, the SLA will provide an opportunity for a full evidentiary hearing prior to taking adverse action such as suspension or termination of a vendor's license. The request for a full evidentiary hearing shall specifically identify the matter in dispute and the error(s) committed in the decision of the commissioner. No new issue or dispute may be raised which was not previously addressed in either the administrative review or conference with the commissioner

Mr. Scott has failed to exhaust the administrative remedies in the BEP's Due Process scheme. He declined to attend the administrative review. Since there was no administrative review, there was no decision for the Commissioner

---

[2] The Due Process regulation at 795-7-12-.02(c)(i) provides, "An Administrative review may be dismissed if the vendor ... withdraws the request in writing ...."

to review. As there was no commissioner's conference, there is nothing for me to review. As stated in Rule 795-7-12-.04, "a conference with the commissioner is a prerequisite to a full evidentiary hearing...." Further, "[n]o new issue or dispute may be raised [in the full evidentiary hearing] which was not previously addressed in either the administrative review or the conference with the commissioner." *Id.*

In summary, as a hearing officer, I have no power to remedy any and all wrongs allegedly perpetrated against Mr. Scott. I can address only such issues that Mr. Scott preserved for review by participating in the BEP's Due Process scheme. No such issues have been preserved. Further, as a mere ADRS hearing officer, I have no power to address Mr. Scott's claims against Mr. Swearengin, and certainly no power to award damages to Mr. Scott.

I conclude that Mr. Scott is entitled to no relief in this forum. If Mr. Scott is dissatisfied with my decision, he may of course file a complaint with the Secretary of Education pursuant to 34 C.F.R. § 395.13(a).

Decision rendered this 13th day of October 2005.

/s/ Frank S. James III
FRANK S. JAMES III
Hearing Officer

cc:  Mr. Stephen K. Simpson
Alabama Department of Rehabilitation Services
Legal Office
P. O. Box 11586
Montgomery, Alabama 36111-0586

Mr. Ray Dennis
Alabama Department of Rehabilitation Services
2129 East South Blvd.
Montgomery, Alabama 36111-0586

Mr. Perry Hopper
Alabama Department of Rehabilitation Services
2129 East South Blvd.
Montgomery, Alabama 36111-0586

Mr. Ken Green
Alabama Department of Rehabilitation Services
2129 East South Blvd.
Montgomery, Alabama 36111-0586

Mr. James Swearengin
Gordon Persons Building
50 North Ripley Street
Montgomery, Alabama 36130

454550-1
030798.000003